DARREN M. HARRIS [SBN 190399]
**SPRAY, GOULD & BOWERS LLP**
2 Corporate Park, Suite 201
Irvine, CA 92606
Telephone: (949) 387-4444
Facsimile: (949) 387-4544
E-mail: dharris@sgblaw.com

*Attorneys for Plaintiff,* JOHN DINO DeFAZIO

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN DINO DeFAZIO, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF SAN BERNARDINO; MICHAEL A. RAMOS, in his individual capacity; HOLLIS "BUD" RANDLES, in his individual capacity; ROBERT SCHREIBER, in his individual capacity, ADAM ALEMAN, in his individual capacity, JOHN GORITZ, in his individual capacity and DOES 1 to 10, inclusive;<br><br>Defendants. | CASE NO.:<br>*Related to Case No:*<br>5:18-cv-00420-JGB-SHKx<br>*and*<br>5:18-cv-00672-JGB-SHKx<br>5:18-cv-01597-JGB-SHKx<br>5:18-cv-01216-JGB-SHKx<br>5:18-cv-02202-JGB-SHKx<br><br>**COMPLAINT FOR:**<br><br>**(1) MALICIOUS PROSECUTION (42 U.S.C. §1983);**<br>**(2) RETALIATION (42 U.S.C. §1983);**<br>**(3) FABRICATION OF EVIDENCE (42 U.S.C. §1983);**<br>**(4) *MONELL* CLAIM (42 U.S.C. §1983);**<br>**(5) SUPERVISORIAL LIABILITY (42 U.S.C. §1983); and**<br>**(6) CONSPIRACY (42 U.S.C. §1983)**<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

**COMPLAINT FOR DAMAGES**

Plaintiff JOHN DINO DeFAZIO alleges and complains as follows:

## **INTRODUCTION**

1.      Plaintiff, JOHN DINO DeFAZIO ("DeFAZIO"), brings this action seeking compensatory and punitive damages against Defendants, COUNTY OF SAN BERNARDINO (County), MICHAEL A. RAMOS, JOHN GORITZ, HOLLIS "BUD" RANDLES, ROBERT SCHREIBER, and ADAM ALEMAN for violations of Mr. DeFAZIO's civil and other rights under the United States Constitution.

2.      DeFAZIO's claims are based upon an illegal campaign of retaliation, intimidation, harassment, fabrication of evidence and malicious prosecution by the County through their employees.  DeFAZIO was the founder and leader of the Inland Empire Political Action Committee (hereinafter referred to as "IE PAC"). During that time, a Mr. Jeffrey S. Burum and Colonies Partners sued the County for the right to receive just compensation for the uncompensated "taking" of 72 acres of land by Defendant County and the San Bernardino County Floor Control District (District) for a regional flood control facility.  Mr. Burum and Colonies exercised their First Amendment free speech rights to petition the government and advocate for the settlement of the lawsuit.  As a result of the constitutionally protected efforts of Mr. Burum and Colonies, a settlement of the lawsuit in the amount of $102-million dollars was reached in November of 2006.

3.      Following the settlement, Colonies continued to exercise it's free speech rights, again under the leadership and guidance of Mr. Burum, by making political contributions to general purpose political action committees (PAC's) affiliated with pro-development politicians, including members of the San Bernardino County Board of Supervisors and others who had supported the settlement, including to various media outlets, the goal of these PAC contributions was to support pro-development politicians and candidates for political office who

## **COMPLAINT FOR DAMAGES**

root out the intransigent and corrupt elements of the County that had plagued the Colonies civil litigation.

4.      One of the political contributions made by Colonies was to the IE PAC.  The IE PAC was a lawful PAC.  The contribution was made approximately in July 2007, approximately 10 months after the settlement had been reached in the Colonies lawsuit.  DeFAZIO was the Founder and the leader of the IE PAC and the PAC was formed to pursue ethical government in the County and to make lawful political contributions to candidates who would serve the citizens in an ethical and honorable manner.

5.      The IE PAC filed all of the legal and appropriate disclosure documents with the Secretary of State for the State of California.

6.      As a result of the settlement in the Colonies lawsuit, and as a result of the lawful contribution to the IE PAC, the Defendants began a retaliatory campaign developed and manifested in several ways.  One such way was an unfounded criminal investigation of DeFAZIO, Mr. Mark Kirk, Mr. Burum, Mr. Paul Biane, and Mr. James Erwin, and Colonies. This retaliatory and unfounded criminal investigation ultimately resulted in felony charges being brought against DeFAZIO in the case of *People of the State of California v. John Dino DeFazio,* case number: 2010-00-0010291.  DeFAZIO was charged with multiple felonies, all purportedly for perjury.  DeFAZIO was arrested on these charges in February 2009 and he was put into custody.

7.      DeFAZIO was prosecuted for "perjury" based upon the Defendants' false and fabricated accusations of lying to the grand jury about his control of the IE PAC that Defendants alleged was set up to funnel a $100,000 bribe from Mr. Burum disguised as a political contribution.

8.      DeFAZIO was put through 8 years of criminal litigation in the San Bernardino County Courthouse.  Based upon the testimony and the exhibits and

- 3 -
**COMPLAINT FOR DAMAGES**

the evidence that the prosecution produced at the preliminary hearing of DeFAZIO, it was readily apparent that the prosecution of DeFAZIO was malicious and retaliatory and without any justification.

9.     This thorough repudiation of the prosecution's case, and the lengths to which the prosecutors, investigators, and certain County-affiliated witnesses and other witnesses went to manufacture a case against DeFAZIO is evidence of the retaliatory and unjustified motives that drove the criminal investigation and the criminal prosecution from the beginning. Simply put, there was never any evidence of criminal conduct involving the contribution to the IE PAC. DeFAZIO was maliciously and unfairly investigated, charged, and prosecuted on the charges in a criminal court for exercising his constitutional rights to engage in lawful political speech.

10.     The wanton disregard and malicious conduct of the Defendants violates DeFAZIO's constitutional rights under 42 U.S.C. §1983. As a direct and proximate result of the Defendants actions, DeFAZIO has suffered and will continue to suffer damages. DeFAZIO is entitled to compensatory damages, punitive damages, attorney's fees and costs, pre-judgment interest, and all other relief as provided by law.

## JURISDICTION AND VENUE

11.     This case arises under 42 U.S.C. §1983 and other case law. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, and 1367(a).

12.     Venue is proper in the Central District of California under 28 U.S.C. §1391(b)(1)(2), and because the majority of the Defendants reside in this District and substantial acts and omissions giving rise to DeFAZIO's claims occurred in this District.

**COMPLAINT FOR DAMAGES**

**THE PARTIES**

13. Plaintiff DeFAZIO is an individual who resides in the City of Victorville, in the County of San Bernardino, in the State of California.

14. Defendant County of San Bernardino (County) is a municipal corporation organized and existing under the laws of the State of California. Defendant County was at all relevant times mentioned herein responsible for its own actions and/or omissions as well as the actions and/or omissions and the policies, procedures, customs, and practices of the San Bernardino County District Attorney's Office.

15. At all relevant times, Defendant Michael A. Ramos was the District Attorney of the County of San Bernardino. In that capacity, he is the official responsible for setting and enforcing the policies, customs, and the practices of the District Attorney's Office. Defendant Ramos at all relevant times directed, supervised, authorized, and/or ratified the actions of the office's employees, agents, and officials as alleged herein.

16. At all relevant times, Defendant John Goritz was a Deputy District Attorney for the County of San Bernardino in the District Attorney's office. Defendant Goritz is employed by and is an agent of Defendant County and the District Attorney's Office at all relevant times herein. Defendant Goritz was one of the lead prosecutors from the District Attorney's Office assigned to prosecute DeFAZIO, and as such he directed and participated in the retaliatory criminal investigation of DeFAZIO, including directing, supervising, authorizing, and/or ratifying the actions of other employees, agents, and officials working on the investigation and the criminal action against DeFAZIO.

17. At all relevant times, Defendant Hollis "Bud" Randles was an investigator in the San Bernardino County District Attorney's Office. Defendant

**COMPLAINT FOR DAMAGES**

Randles was a lead District Attorney investigator in the retaliatory criminal investigation and criminal prosecution of DeFAZIO.

18.     At all relevant times, Defendant Robert Schreiber was in investigator in the San Bernardino County District Attorney's Office. Defendant Schreiber was a lead District Attorney investigator in the criminal investigation and criminal prosecution of DeFAZIO.

19.     At all relevant times, Adam Aleman was a Field Representative and assistant to then Supervisor Bill Postmus.  Then, until July of 2008, Defendant Aleman was Assistant Assessor for the County of San Bernardino. Thereafter Defendant Aleman was a cooperating witness who initiated and participated in the retaliatory criminal investigation and criminal prosecution of Colonies and Mr. Burum, which ultimately led to the retaliatory criminal investigation and criminal prosecution of DeFAZIO.

20.     In taking the actions alleged herein, the Defendants acted under color of law, and the Defendants conspired with each other and others to illegally retaliate against, intimidate, and harass and maliciously prosecute DeFAZIO for alleged felony crimes for his lawful and rightful exercise of his free speech rights and his rights to freedom of association in the United States Constitution for his involvement in the lawful and proper IE PAC, and for his involvement in lawful and proper political activities in the pursuit of honest and ethical government in the County of San Bernardino.

<u>**RELEVANT FACTUAL ALLEGATIONS**</u>

21.     A brief statement of the facts of the civil litigation involving Colonies, Mr. Burum, and the County are helpful to understand the claims in this Complaint.

22.     In 1997, Colonies purchased 434 acres of land in Upland, California for development. The County and other entities built the 210 Freeway extension

- 6 -

**COMPLAINT FOR DAMAGES**

through Colonies' property, and the County needed a large area in which to contain the massive water runoff caused by that project and the related 20th Street Storm Drain. The County and the District set out to force Colonies to build the flood control facility itself, on Colonies' own land, and at the expense of Colonies, rather than exercising the County's power of eminent domain over Colonies' land. 29. The existing flood control facilities were utterly inadequate to contain up to 80- million gallons of water per hour that could be flooding onto the property through the 20th Street Storm Drain. Colonies offered to give the County and the District the necessary acreage if the County and the District would pay for the construction of a basin that would control the new storm waters coming from the 210 Freeway project and the 20th Street Storm Drain. The County and the District refused.

23.     The position of the County and the District was that limited easements from the 1930's allowed them to redirect the massive amount of flood waters created by the construction of the freeway project onto the land of Colonies, and that Colonies was obligated to pay for the required flood control facilities.

24.     Colonies filed a Quite Title action in March of 2002 to vindicate its lawful property rights. The Honorable Peter Norell heard the trial in the matter in 2003 in the San Bernardino Superior Court. Mr. Burum testified for Colonies during that trial. The trial went against the County and the District. Judge Norell ruled that the County and the District did not have the right to dump the flood water onto the land of Colonies without paying just compensation. The County and the District appealed the decision of Judge Norell, and 3 years later, a second trial was held before the Honorable Christopher Warner in the San Bernardino Superior Court.

**COMPLAINT FOR DAMAGES**

25.     On July 31, 2006, Judge Warner issued his statement of intended decision after 6 weeks of trial. Judge Warner found that: 1) The County and the District's easements did not justify the necessary flood control facilities, and that the County and the District did not have the right to dump any water onto the land of Colonies; 2) That the County and the District had engaged in "deceit" and that they had played "hide the ball" and that they did try to "coerce" Colonies into giving up it's rights with regard to it's land; 3) That Colonies had taken "every reasonable action to protect the public" even in the face of the County and the District's "deceit and misinformation"; 4) That the County and the District had essentially held Colonies development "hostage" in order to get free flood control construction and had "unreasonably and unjustifiably interfered with Colonies business"; and 5) That the County and the District had "turned on" the 20th Street Storm Drain in 2002 "without providing for any viable flood-control facilities on [Colonies] property and without ensuring public safety from the flooding hazard." 33. Mr. Burum did testify at this second trial before Judge Warner. Judge Warner found that Mr. Burum was "a very credible witness" who had "answered questions directly, succinctly, and without hesitation and equivocation." Unfortunately for the County and the District, Judge Warner criticized the credibility and the truthfulness of several witnesses who had testified at the trial for them, most notably, Mr. Ken Miller and Mr. Patrick Mead who are both Directors for the District. Essentially, Judge Warner adopted the credible testimony of Mr. Burum over the testimony of Mr. Miller and Mr. Mead, which, understandably, was a sharp blow to the County and to the District.

26.     The statement of intended decision by Judge Warner was a critical moment in the legal dispute between Colonies, Mr. Burum, and the County and the District. Indeed, Mr. Mitchell Norton, a Deputy County Counsel for the County of San Bernardino, told investigators that Judge Warner's intended

**COMPLAINT FOR DAMAGES**

decision was "Armageddon" for the County and for the District. According to Mr. Norton, the County and the District would be facing around $300-million dollars in damages in an inverse condemnation action that had been stayed pending the resolution of the quiet title action *IF* the decision of Judge Warner became final. Judge Warner had also found *bad faith* by the County and the District, and that finding would have threatened the attempts of the County and the District to get indemnification from other government agencies who were involved in the expansion of the 210 Freeway.

27.     Mr. Burum commented publicly on the County's and the District's reluctance to settle the legal dispute despite the "Armageddon" decision by Judge Warner. Mr. Burum openly and publicly advocated for a settlement of the dispute, and he offered sharp criticism of the County's Board of Supervisors and staff, resulting in some negative press articles and public opinion regarding the County's and the District's incompetence and misconduct that could potentially expose the taxpayers of the County of San Bernardino to such a large financial risk.

28.     Mr. Burum exercised his United States Constitutional rights and he actively petitioned members of the Board of Supervisors for the County of San Bernardino and other County officials to settle the legal dispute in a reasonable and fair manner.

29.     During the litigation in the legal dispute, Mr. Burum had exercised his United States Constitutional rights by actively supporting and donating to candidates for the Board of Supervisors for the County of San Bernardino. Colonies had likewise actively supported and donated to candidates for the Board of Supervisors for the County.  The candidates, Mr. Paul Biane, and Mr. Gary Ovitt, were pro-development candidates, and each had won their respective elections and had taken their seats on the Board of Supervisors for the County.

**COMPLAINT FOR DAMAGES**

30.    The Board of Supervisors for the County settled the Colonies lawsuit for the sum of $102-million dollars on the date of November 28, 2006 thereby ending the contentious and public legal dispute. The vote was 3-2 in favor of the settlement. Supervisors Paul Biane, Gary Ovitt, and Bill Postmus voted in favor of settling the lawsuit.

31.    Months *after* the 3-2 vote of the Board of Supervisors for the County to settle the lawsuit, Colonies--under the leadership of Mr. Burum--exercised its United States Constitutional rights of free speech and petition and made political contributions to PAC's associated with members of the Board of Supervisors and to others who had supported the settlement of the lawsuit and who would be in favor of pro-development policies and projects.

32.    The IE PAC was one such PAC that received one of these political contributions in July 2007, approximately 10 months after the vote to settle the lawsuit by the Board of Supervisors for the County.  DeFAZIO was the founder and the leader of the IE PAC.

## THE CRIMINAL INVESTIGATION AND PROSECUTION OF DeFAZIO

33.    The County had suffered a stinging defeat by Judge Warner, and had suffered a lot of negative publicity at the hands of Colonies and Mr. Burum. 2 pro-development members of the Board of Supervisors were elected with the support and the political contributions of Colonies and Mr. Burum. And the lawful settlement obligated the County and the District to pay $102-million dollars to Colonies. The Defendants were embarrassed and angry at the turn of events

34.    Despite the lawful vote by the Board of Supervisors for the County to settle the lawsuit to avoid "Armageddon," the County, and the District Attorney's Office for the County of San Bernardino, and it's employees and it's agents, and it's investigators, began a retaliatory and malicious criminal investigation of Colonies and Mr. Burum.  This criminal investigation ultimately led to the lawful

**COMPLAINT FOR DAMAGES**

political contribution made by Colonies to the IE PAC, and to Plaintiff DeFAZIO who was charged with multiple felony charges.

35.    In 2010, Defendant Ramos held a press conference to announce the prosecution of what he called the largest public corruption scandal in the history of California.

36.    Defendant Ramos stated that two Colonies partners had been named as un-indicted co-conspirators at the time, and he warned that there was an "ongoing investigation."  Defendant Ramos said that a "well-orchestrated political and personal attack on this District Attorney, attempting to intimidate me in obstructing justice and finishing this job," and he noted that Colonies and Mr. Burum were threats to his power, and declaring that he was going to "finish the job" by aggressively investigating Colonies and Mr. Burum.

37.    Defendant Ramos said that Colonies had obtained the compensation for its property in "these tough economic times," and explained that his goal was to "get that money back to the citizens."

38.    Defendant Ramos held another press conference in 2011 after Plaintiff DeFAZIO, Mr. Kirk, Mr. Burum, Mr. Biane, and Mr. Erwin were arrested and put into custody.  During this press conference, Defendant Ramos brought up the $102-million dollar settlement, during the press conference, and said that he and his "team" were going to seek an order requiring Colonies and Mr. Burum to return the money that had been approved by the lawful vote of the Board of Supervisors for the County. Defendant Ramos said during the press conference that the District Attorney's Office and the County Counsel's Office for the County of San Bernardino were "partners" in their efforts to recover the $102-million dollars thereby demonstrating that the Defendant Ramos and the Defendant County were complicit in the malicious and retaliatory scheme to pursue a criminal investigation and to seek charges against DeFAZIO.

-  11  -

**COMPLAINT FOR DAMAGES**

39.     The pretext for the retaliatory and malicious criminal investigation and the flawed presentation of the evidence leading to charges of multiple serious felony charges against Plaintiff DeFAZIO was the contribution to the IE PAC. The heart of the retaliatory criminal investigation was that the contribution to the IE PAC in July 2007 was a "secret" payoff for the votes of the members of the Board of Supervisors for the County to approve the $102-million dollar settlement.  In short, the contribution to the IE PAC was an alleged bribe. (And that the contributions to the other PAC's were also alleged bribes.)

40.     The Defendants knew, and chose to ignore, the fact that the contribution to the IE PAC was fully and publicly disclosed on all of the appropriate disclosure forms commonly used by PAC's.  The IE PAC filed all of the appropriate disclosure forms with the Secretary of State for the State of California to publicly document all of its financial activities.  The IE PAC had an experienced person, Betty Presley, who made sure that all of the financial activities of the IE PAC were proper, legal, and in full compliance with the laws for the creation, and the organization, and the operation of a PAC in the State of California.

41. The Defendants knew, and chose to ignore, the fact that the IE PAC was set-up and organized for a legal and legitimate purpose, to wit, to promote and support better and ethical government in the County of San Bernardino, and to promote and support better and ethical candidates to political office for the betterment of the residents of the County of San Bernardino.

42.     The Defendants knew that the political contribution to fund the IE PAC came from Colonies under the leadership of Mr. Burum in the exercise of their lawful free speech rights under the United States Constitution. The Defendants knew that DeFAZIO was the founder and leader of the IE PAC who decided to serve in that role in the lawful exercise of his free speech rights and in

**COMPLAINT FOR DAMAGES**

the lawful exercise of his rights of freedom of association under the United States Constitution.

43.     The Defendants unfairly and maliciously targeted DeFAZIO because of the fact that Colonies and Mr. Burum had made the lawful political contribution to the IE PAC.

44.     Such public inflammatory, reckless, and prejudicial statements by the Defendants evidenced a malicious and retaliatory motive and conspiracy by the Defendants to pursue a criminal investigation and to seek charges against DeFAZIO.

45.     The Defendants conducted a criminal investigation into Plaintiff DeFAZIO and the IE PAC to target DeFAZIO and the IE PAC simply because the political contribution to fund the IE PAC came from Colonies and Mr. Burum.

46.     The Defendants during the course of the criminal investigation chose to ignore the vast amount of exculpatory evidence and facts that showed that DeFAZIO had done nothing wrong, and in fact, had simply exercised his rights of free speech and his rights of freedom of association under the United States Constitution to become the founder and leader of the IE PAC.

47.     The Defendants presented witnesses and documents to the criminal litigation against DeFAZIO for multiple serious felony charges against him.

48.     The Defendants chose to ignore and chose to not present exculpatory evidence that would have shown that DeFAZIO was exercising his lawful rights of freedom of speech and his rights of freedom of association under the United States Constitution by serving as the founder and leader of the IE PAC.

49.     The theory of the Defendants to maliciously implicate DeFAZIO in the course of the criminal investigation and in the pursuit of the criminal charges against him was that Bill Postmus, and not DeFAZIO, ran the IE PAC and secretly gave himself the monetary "bribe".  Defendants also accused DeFAZIO of

**COMPLAINT FOR DAMAGES**

receiving the money from Mr. Burum and Colonies through the IE PAC and then funneling this money to Bill Postmus as "bribes" to vote for the $102-million dollar settlement.  In sum, that the political contribution from Colonies to the IE PAC was a "payoff" or a "bribe" for the vote to approve the settlement.

50.     During the criminal investigation and prosecution of DeFAZIO, Defendant Adam Aleman intentionally and knowingly testified falsely that DeFAZIO did not run or control in any way the IE PAC and that DeFAZIO was merely a puppet for Bill Postmus who was really in charge of the IE PAC.  As such, Aleman falsely testified that Postmus was able to illegally direct IE PAC monies to known friends, colleagues and political influences of Postmus.

51.     The prosecution was brought in retaliation against DeFAZIO because he would not lie to Defendants and they wanted him to go along with their theory that he was a mere puppet of Postmus and that DeFAZIO did not run the IE PAC. Defendants were seeking this theory because it fit into their broader scheme and goal of indicting Burum and Erwin from the Colonies case.

52.     In January 2018, Judge Harold T. Wilson, Jr. dismissed all six charges of felony perjury against DeFAZIO in the "interest of justice".

53.     Defendants Ramos and Goritz, are members of the California State Bar.  As such, these Defendants are governed by the California Rules of Professional Conduct (RPC.)  One such applicable rule is Rule 5-110 of the RPC. Rule 5-110 says that one of the Special Responsibilities of a Prosecutor is to not institute or continue to prosecute a charge that the prosecutor knows is not supported by probable cause.  Based upon the substantial amount of exculpatory evidence that the Defendants themselves knew of, and that was readily available to them yet not presented to the members of the criminal Grand Jury or at the preliminary hearing, the reasonable conclusion is that the Defendants were obligated to dismiss the charges against DeFAZIO.  By not dismissing the charges

**COMPLAINT FOR DAMAGES**

against DeFAZIO shows a malicious and retaliatory motive by the Defendants to punish DeFAZIO for the lawful exercise of his right to free speech and his rights to freedom of association under the United States Constitution.

## FIRST CLAIM

### (MALICIOUS PROSECUTION Pursuant to 42 U.S.C. §1983
### Against All Defendants and Does 1 to 10)

54.    Plaintiff DeFAZIO and incorporates by reference each allegation contained in paragraphs 1 through 53, inclusive, in this Complaint as though fully set forth herein.

55.    42 U.S.C. §1983 provides in part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress."

56.    As alleged hereinabove, the criminal investigation and the criminal prosecution of DeFAZIO was undertaken to retaliate against DeFAZIO for the lawful exercise of his right to free speech and his rights of freedom of association under the United States Constitution.

57.    The actions and the conduct of the Defendants caused DeFAZIO to be maliciously prosecuted without probable cause and for the purpose to retaliate and punish DeFAZIO for the lawful exercise of his right to free speech and his rights of freedom of association under the United States Constitution.

**COMPLAINT FOR DAMAGES**

58.     The harm to DeFAZIO from the illegal actions of the Defendants has resulted in the loss of business, loss of income, the loss of retirement benefits, the loss of employment, the loss of business opportunities, the loss of reputation, the cost of hiring lawyers, emotional distress and such other compensatory damages in an amount to be proven at trial.

59.     The actions and the conduct of the Defendants was willful, wanton, malicious, retaliatory, and with reckless disregard for the Constitutional rights of DeFAZIO and does therefore justify the imposition of exemplary and punitive damages as to each of them.  DeFAZIO does not seek exemplary and punitive damages against the County, since he is precluded from doing so by law.

## SECOND CLAIM

### (RETALIATION Pursuant to 42 U.S.C. §1983

### Against All Defendants and Does 1 to 10)

60.     DeFAZIO re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 59, inclusive, in this Complaint as though fully set forth herein.

61.     Defendants Ramos, Goritz, Randles, and Schreiber are, or were, all *state actors* or *acting under the color of state law* at all relevant times herein, and all of them had a duty to permit DeFAZIO to the free exercise of his right to free speech and his rights of freedom of association and to the free exercise of his other rights under the United States Constitution.

62.     When DeFAZIO exercised his rights under the United States Constitution as alleged herein, the Defendants *retaliated* against him by participating in actions and conduct to interfere with, and to deprive the Plaintiff, in the free exercise of his rights.  The Defendants' retaliatory actions and conduct include, but are not limited to, the following:

**COMPLAINT FOR DAMAGES**

A.      Initiating a baseless and illegitimate criminal investigation of the IE PAC, and of DeFAZIO;

B.      Eliciting false statements during the criminal investigation phase, and false and perjurious testimony during the criminal Grand Jury in April of 2011, and during the criminal hearing in 2018 concerning non-existent criminal activity with regard to the IE PAC, and the lawful political contribution to the IE PAC from Colonies;

C.      Threatening and coercing other witnesses, such as Mr. Matt Brown, into the giving or the making of false statements during the criminal investigation and providing perjurious testimony.

D.      Fabricating and falsifying evidence during the criminal investigation;

E.      The deliberate hiding of exculpatory evidence.

63.      The lawful and free exercise by DeFAZIO of his rights under the United States Constitution was the reason for the retaliatory actions and illegal conduct of the Defendants.

64.      The harm to DeFAZIO from the illegal actions of the Defendants has resulted in the loss of business, loss of income, the loss of retirement benefits, the loss of employment, the loss of business opportunities, the loss of reputation, the cost of hiring lawyers, emotional distress and such other compensatory damages in an amount to be proven at trial.

65.      The actions and the conduct of the Defendants was willful, wanton, malicious, retaliatory, and with reckless disregard for the Constitutional rights of DeFAZIO and does therefore justify the imposition of exemplary and punitive damages as to each of them.  DeFAZIO does not seek exemplary and punitive damages against the County, since he is precluded from doing so by law.

/ / /

/ / /

- 17 -

**COMPLAINT FOR DAMAGES**

## THIRD CLAIM

### (FABRICATION OF EVIDENCE Pursuant to 42 U.S.C. §1983
### Against All Defendants and Does 1 to 10)

66.     DeFAZIO re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 65, inclusive, in this Complaint as though fully set forth herein.

67.     As alleged above, the Defendants fabricated evidence that was used to obtain charges against DeFAZIO for multiple serious felonies.

68.     The Defendants continued the criminal investigation of DeFAZIO even though knowing that DeFAZIO was innocent of all of the alleged criminal activity, and the Defendants were intentionally indifferent to the innocence of DeFAZIO.

69.     The Defendants used tactics that were coercive and abusive such that they knew, or were intentionally indifferent to, the fact that such tactics would produce false and inherently unreliable information and evidence, and that such information and evidence was used to seek charges for serious felonies against DeFAZIO.

70.     The harm to DeFAZIO from the illegal actions of the Defendants has resulted in the loss of business, loss of income, the loss of retirement benefits, the loss of employment, the loss of business opportunities, the loss of reputation, the cost of hiring lawyers, emotional distress and such other compensatory damages in an amount to be proven at trial.

71.     The actions and the conduct of the Defendants was willful, wanton, malicious, retaliatory, and with reckless disregard for the Constitutional rights of DeFAZIO and does therefore justify the imposition of exemplary and punitive damages as to each of them.  DeFAZIO does not seek exemplary and punitive damages against the County, since he is precluded from doing so by law.

- 18 -

**COMPLAINT FOR DAMAGES**

# FOURTH CLAIM

## (*MONELL* CLAIM Pursuant to 42 U.S.C. §1983

### Against Defendant County Only)

72.     DeFAZIO re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 71, inclusive, in this Complaint as though fully set forth herein.

73.     DeFAZIO lawfully exercised his right to free speech and his rights to freedom of association, and other rights, under the United States Constitution at all relevant times herein. The individual Defendants, acting under the color of state law, then retaliated against DeFAZIO as alleged herein for what the Defendants knew was DeFAZIO's lawful exercise of his rights under the United States Constitution.

74.     The Defendant County had in place official, and widespread, and longstanding practices and procedures that amounted to the deliberate and intentional indifference to DeFAZIO's right to exercise his rights under the United States Constitution without the retaliation of the government.

75.     The practices and the procedures and the policies of the Defendant County were a motivating and moving force behind the retaliatory actions and conduct as alleged herein. The Defendant County permitted, maintained, and allowed, but is not limited to, the following:

A.     Permitting, ratifying, and condoning, the District Attorney's Office for the County of San Bernardino to engage its resources and its investigators in politically-charged criminal investigations without the regard for the existence of credible and reliable evidence;

B.     Permitting, ratifying, and condoning, the Defendant County's employees in the District Attorney's Office to prepare and execute falsified search

**COMPLAINT FOR DAMAGES**

warrants and engage in un-warranted criminal investigations in a manner intended to embarrass, punish, and harass resulting in retaliation;

C.      Permitting, ratifying, and condoning, the District Attorney's Office to target the free speech that is protected by the United States Constitution through the un-warranted criminal investigations for the purpose of chilling such protected free speech;

D.      Permitting, ratifying, and condoning, the collusive action between the District Attorney's Office and other County employees for the purpose of engaging in un-warranted criminal investigations in such a way as to intentionally embarrass, punish, and harass as retaliation.

76.      Defendant Ramos who at all times relevant herein was an official with final policymaking authority as it relates to the District Attorney's Office and the criminal investigations that are undertaken and maintained by the District Attorney's Office.  Therefore, the actions and the conduct of the Defendant Ramos as alleged herein and his authority and supervision of the District Attorney's Office, and his willful, affirmative, and conscious approval and ratification of the illegal, wrongful, and retaliatory criminal investigation of DeFAZIO constitutes an act of official government policy.

77.      As a legal and proximate result of the County's practices and procedures and policies, as alleged herein, and the Defendant Ramos's actions and conduct as an official with policymaking authority, the Defendant County violated the right of DeFAZIO to the free exercise of his rights under the United States Constitution without the retaliation of the government which has resulted in DeFAZIO suffering harm and injury, including the loss of income, the loss of retirement benefits, the loss of employment, the loss of business opportunities, the loss of reputation, the cost of hiring lawyers, emotional distress and such other compensatory damages in an amount to be proven at trial.

**COMPLAINT FOR DAMAGES**

## FIFTH CLAIM

### (SUPERVISORIAL LIABILITY Pursuant to 42 U.S.C. §1983
### Against Defendant RAMOS Only)

78.   DeFAZIO re-alleges and incorporates by reference herein each allegation contained in paragraphs 1 through 77, inclusive, in this Complaint as though fully set forth herein.

79.   On the basis of information and belief, and on the basis of the fact that Defendant Ramos was the District Attorney for the County of San Bernardino at all times relevant herein, the Defendant Ramos supervised the other individual Defendants regarding their actions and their conduct as alleged herein. As the District Attorney for the County of San Bernardino, and as their supervisor, Defendant Ramos knew or should have known of their malicious and illegal retaliatory actions and conduct and the Defendant Ramos did not take steps to prevent and to stop said action and conduct. The failure by Defendant Ramos to take the steps to prevent and to stop the malicious and the illegal retaliatory actions and conduct of the other individual Defendants resulted in the deprivation of, and the interference with, the lawful exercise of the rights of DeFAZIO under the United States Constitution.  Defendant Ramos's supervision, control, and training of the other individual Defendants was a legal and proximate cause of their illegal retaliatory actions and conduct and constituted the deliberate and intentional indifference to the deprivation of the rights of DeFAZIO under the United States Constitution.

80.   Defendant Ramos's supervisorial conduct as alleged herein was so closely related and connected to the deprivation of the rights of DeFAZIO under the United States Constitution as to be the moving force that caused the resulting injuries to DeFAZIO.  Each of the Defendants was acting under the color of the state law.

**COMPLAINT FOR DAMAGES**

81.     As a legal and proximate result of Defendant Ramos's actions, Defendants violated the right of DeFAZIO to the free exercise of his rights under the United States Constitution without the retaliation of the government which has resulted in DeFAZIO suffering harm and injury, including the loss of income, the loss of retirement benefits, the loss of employment, the loss of business opportunities, the loss of reputation, the cost of hiring lawyers, emotional distress and such other compensatory damages in an amount to be proven at trial.

## SIXTH CLAIM

### (CONSPIRACY Pursuant to 42 U.S.C. §1983

### Against All Defendants and Does 1 to 10)

82.     DeFAZIO re-alleges and incorporates by reference each allegation contained in paragraphs 1 through 81, inclusive, in this Complaint as though fully set forth herein.

83. The Defendants formed a combination of two or more persons acting in concert to commit the individual acts described in this Complaint herein, the primary and principal element and objective was the agreement amongst the Defendants to maliciously and illegally retaliate against DeFAZIO and to deprive him of his right to free speech, and his rights of freedom of association, and his other rights, such as his right to Due Process in the Fifth and Fourteenth Amendments, and his right to the Equal Protection of the law under the Fourteenth Amendment under the United States Constitution.

84.     The Defendants conspired, combined, colluded, and/or agreed to act in concert to wrongfully initiate and pursue the criminal investigation of DeFAZIO, and to seek charges against DeFAZIO, and to prosecute him for multiple serious felony crimes because DeFAZIO lawfully exercised his rights under the United States Constitution to serve as the leader and the ounder of the IE

**COMPLAINT FOR DAMAGES**

PAC, and to lawfully and properly accept a political contribution from Colonies to the IE PAC.

85.     The Defendants performed overt acts in furtherance of the conspiracy as alleged herein.

86.     The Defendant's conspiracy was the proximate cause of the illegal retaliation against DeFAZIO and the deprivation of DeFAZIO's rights under the United States Constitution.

87.     As a direct result of the Defendant's conspiracy, DeFAZIO has suffered injury and harm, including the loss of income, the loss of retirement benefits, the loss of employment, the loss of business opportunities, the loss of reputation, the cost of hiring lawyers, emotional distress and other such compensatory damages in an amount to proven at trial.

88.     The actions and the conduct of the Defendant's was willful, wanton, malicious, and was done with the reckless disregard for the right of DeFAZIO to freely exercise his rights under the United States Constitution, and has resulted in the deprivation of the rights of DeFAZIO under the United States Constitution and therefore does justify the imposition of exemplary and punitive damages as to each of them.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF demands judgement against Defendants for the following relief

1.     Damages of no less than $20 million dollars, but in an amount ultimately to be proven at trial, including but not limited to:

    a.     Compensatory damages for injury to person, lost income, lost retirement benefits, loss of reputation, loss of other employment benefits, and loss of business opportunities;

    b.     Punitive damages.

- 23 -

**COMPLAINT FOR DAMAGES**

1       2.     An award of reasonable attorney's fees, costs, and expenses to

2  Plaintiff pursuant to 42 U.S.C. §1988, in an amount to be proven at trial;

3       3.     For costs of suit herein incurred;

4       4.     Pre-judgment interest;

5       5.     For such other and further relief as this Court shall find just and

6  proper.

## DEMAND FOR JURY TRIAL

     Pursuant to FRCP Rule 38 and Local Rule 38, Plaintiff hereby demands a trial by jury.

Dated: March 28, 2019          SPRAY, GOULD & BOWERS LLP

BY: _____

        DARREN M. HARRIS
        Attorneys for Plaintiff,
        JOHN DINO DeFAZIO

**COMPLAINT FOR DAMAGES**